HENRY SCHMIDT, APPELLANT, *v.* MAX VOGT, PHILIPENA CHAPMAN, AND J. B. CROSSEN, RESPONDENTS.

SCHOOL LAND—PURCHASER'S RIGHT TO SEVER TIMBER BEFORE COMPLETING PAYMENTS.—The purchaser of a tract of school land, having paid one third part of the purchase-money, and received a certificate of purchase under section 10, p. 632, of the Code, afterwards cut and piled up a quantity of cord-wood on the land, and then assigned his certificate of purchase; the assignee did not thereby become entitled to the wood by virtue of the assignment of the certificate.   The wood so cut became personal property when severed from the realty, and belonged to the purchaser of the land who cut and piled it up; and it did not remain the property of the state until the land was fully paid for.

APPEAL from Wasco County.

This is an action of trover, brought by the appellant for the alleged conversion of one hundred and twenty-five and one half cords of woods, valued at six hundred and ninety dollars and twenty-five cents.   On the eighth of June, 1877, B. F. Foley made application to the local agent of the board

of school land commissioners to purchase eighty acres of school land in section 16, T. 2 S., R. 12 E., the price of which was one hundred dollars. He made the first payment on it, and gave two notes, amounting to sixty-six dollars and sixty-six cents, for the balance of the purchase money, and went into possession of the land. After the purchase, he cut the wood in controversy upon it, and piled it up. On the eighteenth of April, 1878, Vogt and Chapman commenced an action against Foley, and on the following day attached the wood, and held it until judgment was rendered in the action, on the seventeenth of June, 1878, against Foley. On the seventeenth of July, an execution was issued on the judgment, and placed in the hands of the sheriff, who had previously attached the wood. This writ was returned on the seventeenth of September, and on the same day, an alias execution was issued, which was filed with the clerk on the fifteenth of October, 1878, without any return of the sheriff's doings.

On the twenty-second of April, 1878, four days after the wood was attached, Foley transferred his right to the land on which it was cut and piled, to one Charles A. Schuster, who paid the balance of the purchase-money, sixty-six dollars and sixty-six cents and interest, on the twentieth of May, to the local agent of the board of school land commissioners, and on the twenty-seventh of May, 1878, obtained a deed for the land. On the thirteenth of August following, Schuster sold and conveyed the land and all his right and title to the wood in controversy to Henry Schmidt, the appellant, in consideration of one hundred dollars. The wood was then still upon the land. Thereafter, by agreement between Foley and Chapman and Vogt, the wood was delivered to the latter.

*J. E. Atwater*, for appellant.

*W. Lair Hill*, for respondents.

By the Court, KELLY, C. J.:

The position taken by the appellant is that Foley had no right to cut the wood in controversy on the land which he

purchased from the board of school land commissioners until he had fully paid for it, and that, having done so, and severed it from the realty, it was and still remained the property of the state. That when Schuster bought the land from the state he acquired its right and title to the wood also, and that when Schuster sold and conveyed the land to appellant he became the owner of the wood as well as the land itself. We do not consider this position to be correct, but conceding for the present that it is, and that Foley was not the owner of the wood when cut and piled up, it does not follow that when the state conveyed the land to Schuster it transferred to him the wood that was upon the land.

In the case of *Wincher* v. *Shrewsbury*, 2 Scam. 3 Ill. 283, it appears that the plaintiff went upon a tract of land belonging to the United States and made a quantity of rails from timber trees on the land. The rails were lying in piles on the land when the defendant entered and purchased it from the United States. He then forbade the plaintiff from taking the rails off his land, and hauled them away and converted them to his own use without the consent of the plaintiff. In an action to recover the value of the rails, Chief Justice Wilson, delivering the opinion of the court, said: "At the time the trespass was committed by the plaintiff, the land, and consequently the timber growing on it, of which the rails were made, belonged to the government. The cutting of the timber was, therefore, an injury and a trespass against the government, and it had a legal remedy. Therefore the defendant had neither a right of property nor a right of action at the time of the plaintiff's trespass in making the rails. To what, then, did he acquire title by a subsequent purchase of the land? Certainly not to a right of action for a previous trespass; nor to the timber which had previously been severed from the land and converted into rails, farming utensils, or anything else. A certificate of purchase or patent vests in the patentee a title to the land, and, generally, all that is growing on or is, in contemplation of law, attached to the land, as houses, fences, growing timber, etc., and, it is said, fallen timber,

passes with the land.  But that which has been severed from the land, and by the art and labor of man converted into personal property, such as implements of husbandry, barrels, furniture, or even rails, when not put into a fence, * * * * do not pass with it, any more than the grain, grass, or fruit which has grown upon it and been gathered from it.  The government being the owner of the land at the time of the trespass by cutting timber, it might recover in trespass for the injury done to the land, or by action of trover to recover the value of the rails, which would certainly be a ban to the defendant's recovery for the same trespass, * * * * The vendor and vendee of the land can not both have a remedy for the same trespass."  The same principle was afterwards enunciated by that court in a similar case.  (*Brown* v. *Throckmorton*, 11 Ill. 529.)

Applying to the case under consideration the principle declared by the supreme court of Illinois, which we hold to be a correct exposition of the law, it follows as a necessary result that no title to the wood passed to Schuster when the state made him a deed for the land; and consequently he could give none to the appellants; and it is well settled that in an action of trover the plaintiff must establish property in himself at the time of conversion, in order to recover. (*Sheldon* v. *Soper*, 14 Johns. 353.)  We hold, however, as a matter of law, that the wood for the conversion of which this action was brought, did not belong to the state, but that Foley was the owner of it after it became personal property by severance from the realty.  He had purchased the land, paid one third of the purchase money, and given his notes for the balance; and was in the lawful possession of it.  He could not, therefore, on any principle of law, be considered a trespasser when he cut the wood upon it, nor be held responsible for the value of it.  The legislative assembly, when it authorized a sale of the school lands belonging to the state, imposed no condition upon the purchaser as to the manner in which he should use the land. Whether it is good policy or not to permit him to cut down and dispose of growing timber, before he has fully paid the purchase money, is a matter for legislative consideration,

with which the courts have nothing to do. It is for them to say that any restrictions should be imposed upon him in the enjoyment of the land, or the use he shall make of it.

It is true that a pre-emption settler on the public lands, before purchasing the same, is not allowed to cut down and dispose of growing timber, other than such as may be necessary for his own use in the ordinary course of husbandry. But that is because the land belongs to the United States, and the settler has, at most, but a license from the government to occupy it, and the right to purchase the same within a specified time, at the minimum price. He is not, therefore, permitted to lessen the value of the land which is not his own.

It follows, from the view we take of the law, that the appellant never had any interest or property in the wood in controversy, and that he is not entitled to recover in this action. It is not necessary, therefore, to examine or consider the other points raised in the argument by counsel.

The judgment of the circuit court is affirmed with costs.